COLASURDO v. CENTRAL R. R. OF NEW JERSEY.

(Circuit Court, S. D. New York. July 1, 1910.)

1. REMOVAL OF CAUSES (§ 102*)—GROUNDS OF FEDERAL JURISDICTION—RE-MAND.

Where an action for injuries to a servant was removed to the federal court for diversity in citizenship, but also involved a construction of Federal Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), under which the suit was brought, it was not subject to remand on it appearing at the trial that the parties were of the same citizenship; federal jurisdiction being shown by the fact that the suit involved the construction of a law of the United States.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 218; Dec. Dig. § 102.*]

2. COURTS (§ 289*)—FEDERAL COURTS—JURISDICTION.

Where a suit brought under Federal Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), involved a determination of the meaning of the phrase "person employed by such carrier in interstate commerce," federal jurisdiction existed, even though the complaint should be dismissed because plaintiff was not a person so employed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 830; Dec. Dig. § 289.*]

3. MASTER AND SERVANT (§ 180*)—INJURIES TO SERVANT—NEGLIGENCE—EM-PLOYER'S LIABILITY ACT.

Where plaintiff, a track walker, was injured while assisting certain fellow employés in repairing a switch in a railroad yard by being struck by certain cars, kicked toward him, and from the relative position of plaintiff and his fellow employés the jury could have found that plaintiff was relying on them to look out for trains approaching from that direction, their failure to warn him constituted negligence of fellow servants which, as provided by Federal Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), was an actionable negligence of the railroad company.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

4. MASTER AND SERVANT (§ 180*)—INJURY TO SERVANT—RAILROADS—NEGLI-GENCE.

Where a trackman was injured in a railroad yard, by certain unlighted passenger cars kicked along the track at night without warning, and the brakeman at the rear, although he saw the lights of the trackman, waited too long before trying to check the train which was running under its own impetus, actionable negligence on defendant's part was shown.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

5. MASTER AND SERVANT (§ 228*)—INJURIES TO SERVANT—RAILROADS—CON-TRIBUTORY NEGLIGENCE.

In an action under Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), for injuries to a trackman in a railroad yard, by being struck by certain passenger cars, kicked along the track, contributory negligence is no defense.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 228.*]

6. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—ASSUMED RISK.

Plaintiff, a railroad trackman, was assisting other employés in the repair of a switch in a railroad yard at night, when he was struck and injured by certain cars negligently kicked along the track without light or warning. There was evidence that plaintiff had never before been called on to mend a switch, and that plaintiff and another employé at the time of the injury were obeying the directions of their foreman in holding lan-

terns to light him in the work. *Held*, that plaintiff did not assume the risk of such injury under the rule that assumed risk begins only after plaintiff is aware of the master's delinquency.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–583; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

7. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—OPERATION OF TRAINS—WATCH.

Where a gang of men is working on a railroad track at night where trains are being constantly operated, whether the railroad company in the exercise of reasonable care should give instructions that some one among them should keep a lookout to protect the rest from injury is for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1033; Dec. Dig. § 286.*]

8. MASTER AND SERVANT (§ 180*)—INJURIES TO SERVANT—EMPLOYER'S LIABILITY ACT.

Federal Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), regulating the liability of interstate carriers for injuries to servants, includes within its scope all persons who could be included within the constitutional power of Congress, and hence included a trackman engaged in the repair of a switch connected with a track used for both interstate and intrastate commerce.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

At Law. Action by Michael Colasurdo against the Central Railroad of New Jersey. Verdict for plaintiff. Motion for new trial on exceptions. Denied.

This is an action of negligence against a railroad company. The plaintiff was a track walker whose leg was cut off by a train of four cars running without an engine in the Jersey City yard of the defendant on Christmas day, 1908, at about 10 minutes before 7, at which time he and two other men were at work repairing a switch in the yard. The man actually at work upon the switch was one Nighland, who was in command of the plaintiff and another track walker. Nighland was seated at the switch engaged in repairing, and both he and the other two men had lanterns to light him at his work. A train had come from Somerville, N. J., had discharged its passengers at the Jersey City station, had been pulled back west to Fiddlers, a station just outside the yard, and was being "kicked" back under the control only of the car brakes, so that it might arrive at the embarking platform to take a new load of passengers to Somerville. At the time of the accident, it was from 400 to 500 feet from the end of the platform and was running eastward toward the platform under its own momentum, which it had received from the "kick" of the locomotive, which had at the time been cut off from the cars.

Nighland was killed by the accident, the plaintiff had his leg cut off, and the other track walker escaped. Both plaintiff and the track walker testified that they heard no whistle or other sound, and the unhurt track walker that he saw no light. An employé of the defendant was upon the back of the last car, which was the front of the moving train as it was being backed down to the platform. He says that he put two white lights on the rear platform, and the red lights which mark the rear of a train behind the door; that he saw the three lights of the men working upon the track some 200 feet before the train reached them, and at once shouted and whistled and made such noise as he could, but supposed they heard him and would in time leave the track until the train was within six or eight feet, at which time he applied his brake, but too late. The plaintiff relied in part upon the failure

of the defendant to give instructions to guard the three men by having some one detailed to watch out for cars and protect them.

The case was originally brought in the Supreme Court of the state and removed by the defendant for diverse citizenship. Upon the trial, after it appeared that the plaintiff was a citizen of the United States, resident in New Jersey, the defendant company being concededly a New Jersey corporation, the defendant moved to dismiss or remand the case for failure of jurisdiction. The complaint had, however, set up, among other grounds, that the plaintiff sued to recover under the federal employer's liability act, passed April 22, 1908, and being chapter 149 of the First Session of the Sixtieth Congress (35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1171]). This act provides that every common carrier by railroad, while engaged in commerce between the states, should be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, where the injury or death result from the negligence of any of the officers, agents, or employés of the carrier. Section 3 of that act provides that contributory negligence shall not bar a recovery, but that the damages shall be diminished pro tanto. The plaintiff thereupon insisted that the action was none the less maintainable in this court, though not originally brought there in view of the fact that the suit was alleged in the complaint to arise under a law of the United States. Plaintiff further contended that the dispute involved a construction of the statute itself and was not a contest about the facts only (Austin v. Gagan [C. C.] 39 Fed. 626, 5 L. R. A. 476), and in that connection he proved that the tracks connected by the switch in question were used by the defendant for the passage of trains from the state of New Jersey to the state of Pennsylvania, as well as for trains that had their western terminus within New Jersey. The question was therefore raised whether the plaintiff engaged in the repair of such a switch was within the statute "a person suffering injury while he was employed by such carrier in such commerce."

The defendant urged that the plaintiff assumed the risk of his position, and that the defendant had not been negligent in any way. At the close of the case, the defendant made a motion for the direction of a verdict and made several exceptions to the charge which will be considered hereafter.

Thomas J. O'Neil, for plaintiff.
De Forest Bros., for defendant.

HAND, District Judge (after stating the facts as above). The question is squarely raised in this case of the jurisdiction of this court. In so far as it depends upon diverse citizenship, the case must be remanded under Act March 3, 1875, c. 137, 18 Stat. 470 (U. S. Comp. St. 1901, p. 507). That act provides, in section 5, that, if at any time it appears that the suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of the said Circuit Court, that court shall proceed no further, but dismiss the suit or remand it to the court from which it was removed, as justice requires. If, however, the dispute or controversy is one arising under a law of the United States, then this court has jurisdiction, and it makes no difference that the defendant could not have been originally sued in such a controversy outside of its domicile. Such domiciliary objections do not go to the subject-matter of the jurisdiction, and the only ground for a remand or dismissal under the act of 1875 is when "the dispute or controversy" is not "properly within the jurisdiction" of this court. Such a dispute or controversy is within its jurisdiction if the correct construction of the law, which is laid in the complaint as the basis of the right of action, is necessarily involved in the decision, and it is quite clear in this case that it is necessary to determine the mean-

ing of the phrase "person employed by such carrier in such commerce." Therefore this court has jurisdiction, even though the complaint should be dismissed because the plaintiff was not a person so employed. In short, a decision of the meaning of that act is necessary, and such a necessity gives me jurisdiction, regardless of the result of the case. Huntington v. Laidley, 176 U. S. 668, 20 Sup. Ct. 526, 44 L. Ed. 630.

Coming then to the merits, I will take up the points raised by the defendant seriatim. First, upon the motion to direct a verdict, I think the refusal was proper. From the evidence the jury could have found that the plaintiff, who was under the orders of Nighland, had been standing facing east so that the train came upon him from the rear, while Nighland himself was at work facing either south or west, and the other track walker stood apparently between the two. If this was the relative position of the three men, the jury could have found that the plaintiff was relying upon the other track walker or Nighland to look west and to observe the trains. If both failed to warn plaintiff of the train coming from that direction, the accident was due to their negligence in a duty reasonably imposed upon them, and, though they were fellow servants, yet under this statute their negligence was that of the master. The fellow-servant rule has been so much ingrained in both bench and bar that this point was not made on the trial; but it was directly in the evidence and justified a refusal to dismiss for lack of the defendant's negligence.

Besides, there was also evidence in the case that the rear of the train was not lighted, that no warning was given of the train's approach, and that the man at the rear, although he saw the lights, waited too long before trying to check the train. Since the accident happened at night, and the train was running swiftly and without any ready means of control, I think the case is clearly differentiated from Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, and I certainly do not think that as matter of law there was no negligence in operating in a freight yard four cars under their own impetus, after dark, without warning and without light. None of the cases cited by the defendant have a set of facts similar to this. Upon these two grounds therefore, and without considering the question of the necessity of stationing a man to watch the three, I am satisfied that there was evidence of the defendant's negligence.

Contributory negligence being no defense, there remains only the assumption of the risk, which clearly enough is differentiated in the statute, though the usual distinctions between the two seem to me, I must say, very unscientific and vague. Perhaps the best difference is that of the degree of proximity of the supposed acceptance of the danger to its occurrence. Schlemmer v. Buffalo, etc., R. R. Co., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681. The plaintiff here assumed the risk, if at all, either, first, by accepting employment; or, second, by obeying Nighland's order to hold the light. As to the first ground, the jury could have found that he had never been called on to mend a switch before, in which case they could not have found that he assumed the risk when he accepted the employment at the beginning of

the last week or the last day when he went to work. As to the second ground, to obey Nighland's order may have been contributorily negligent; but that is, I think, all it was. If there is any distinction between that and assuming the risk, as the statute requires, to put yourself in such a position is negligence rather than assumption. However, it is not necessary to decide this, because the jury, as I have said before, could well have supposed that the plaintiff relied on Nighland or the other track walker to watch for trains coming from his rear. Clearly he did not as matter of law assume the risk of being run down by an unlighted train which gave no warning to any one, which the jury could have found to be the case. The assumption can begin only after the plaintiff is aware of the master's delinquency.

The only important exception which remains is to that part of the charge which permitted the jury to find the defendant negligent in not stationing some one to watch the gang of men while at work. It was possible under the charge for the jury to find that, although there were lights upon the train, and that the trainman acted reasonably in not trying to stop the train before he did, yet the defendant was negligent in not giving standing instructions in such cases for some employé to watch for trains. The defendant offered evidence that other railroads never did anything of the sort except in cases of large gangs who obstructed each other's vision, in which cases a man is detailed for that purpose; but it is well settled that the necessity of such rule is for the jury. Devoe v. New York Central, 174 N. Y. 1, 66 N. E. 568; McCoy v. New York Central, 185 N. Y. 276, 77 N. E. 1174. It seems to me now, as it did at the time, that where a gang of men is working on the track in the dark, and where trains are being constantly operated as these were operated, it is a fair question for the jury whether the railroad company should give instructions that some one among them keep on the lookout to protect the rest from being injured. Such a person might have to engage in the work from time to time; but it is at least a fair question of fact whether some one should not all the time watch for the approach of trains. Had I myself sat upon such a jury, I should have thought that it was a reasonable necessity for the safety of the men, regardless of the practice of other roads, and that a railroad should have a rule instructing its employés always to maintain a watch, while at work in the dark. It seems quite clear that, unless this is done, the attention of all will of necessity at times become directed upon the work rather than upon the danger.

The remaining question is of the application of the act of 1908, and that turns on whether the plaintiff was employed in interstate commerce. The act in question was passed after the decision of the Supreme Court in the Employer's Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, in which a similar act was declared unconstitutional by a divided court, because it applied generally to all carriers engaged in interstate commerce, regardless of whether or not the particular act was in interstate commerce. Some questions, however, were decided by the whole court in those cases, and one of these was that the act was not unconstitutional because it regulated the relation of master and servant; all the justices recognizing that Congress

might regulate those relations while the master and servant were employed in interstate commerce. The present act was clearly passed to meet the objection of that decision, and I think it should therefore be construed as intending to include within the term "person employed in such commerce" all those persons who could be so included within the constitutional power of Congress; that is to say, the act meant to include everybody whom Congress could include. Under this construction the inquiry becomes whether Congress could constitutionally have passed a statute regulating the relation between a carrier-master and a servant who was engaged in the repair of a track used both for interstate and intrastate commerce. Preliminarily the distinction should be noted that the act will not necessarily apply to the same person in all details of his employment. One man might have duties including both interstate and intrastate commerce, and he would be subject to the act while engaged in one and not the other. This being so, the question is whether his repairing of a switch is such employment, when the switch is used indifferently in both kinds of commerce. Suppose the track had crossed a corner of a state, and there was only one station within that state so that all trains crossing over that track must necessarily be engaged in interstate commerce. Would not a track worker engaged in the repair of such a track be engaged in interstate commerce? I do not think that he would be any the less so engaged than the engineer on the locomotive or the train despatcher who kept the trains at proper intervals for safety. Of course, it is not necessary that the man must personally cross a state line. If the repair of such a track be interstate commerce, does it cease to be such because there are two stations within the state and some of the trains start at one and stop at the other? I cannot think that this is true, although counsel have referred me to no case upon the subject and I have found none. The track is none the less used for interstate commerce, because it is also used for intrastate commerce, and the person who repairs it is, I think, employed in each kind of commerce at the same time.

Despite the earlier ruling in Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23, it has in recent times been stated several times by the Supreme Court that state statutes may indirectly regulate interstate commerce, even though Congress may at any time itself under its proper constitutional powers enact a provision of directly opposite tenor. Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819; Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108. If, as was held in those cases, a state has the power to regulate such commerce until Congress intervenes, because it is as well within the state's proper powers, must not the corollary be true as well, that Congress may intervene, even when the effect of that intervention be incidentally the regulation of intrastate commerce as well? Could not Congress, for example, provide that all tracks used in interstate commerce must be of a standard width and weight? Would that not affect all tracks used in such commerce, although they likewise were used for intrastate commerce? Of course, any one could use any other tracks he choose for intrastate commerce; but it can surely not be a ground to limit Congress' proper powers that the track has a joint use. If so, the repair of such tracks

must be a part of interstate commerce, and under the Employer's Liability Cases, supra, the relations of master and servant arising between the railroad and its employés engaged in repairing the track are similarly within the power of Congress.

I am therefore of opinion that the plaintiff was at the time engaged in interstate commerce and entitled to the rights secured by this act. That being so, it is a matter of no consequence whether the train that struck him was engaged in that commerce or not. It is true that the act is applicable to carriers only "while engaged" in interstate commerce, but that includes their activity when they are engaging in such commerce by their own employés. In short, if the employé was engaged in such commerce, so was the road, for the road was the master, and the servant's act its act. The statute does not say that the injury must arise from an act itself done in interstate commerce, nor can I see any reason for such an implied construction.

I will therefore deny the new trial and direct judgment on the verdict. The defendant, if it wishes, may have a certificate on the jurisdictional point direct to the Supreme Court, though that opens only a limited review. U. S. v. Jahn, 155 U. S. 109, 15 Sup. Ct. 39, 39 L. Ed. 87.