perfectly evident that the requirement of this ordinance in the alternative, namely, either that the horse be fastened or that the wheels of the vehicle be blocked, would not have been violated by defendant if the latter alternative had been adopted. Yet that could not by any possibility have prevented the accident which is the basis of this suit. In this respect the case is clearly distinguishable from Kelley v. N. Y. State Rys., 207 N. Y. 342, 100 N. E. 1115. See, also, Fluker v. Ziegele Brewing Co., 201 N. Y. 40, 43, 93 N. E. 1112, Ann. Cas. 1912A, 793. In this view, it is apparent that defendant's motion to dismiss should have been granted. But that very consideration only brings into clearer relief the error committed in compelling plaintiff to elect.

[4] Strange to say, toward the conclusion of its case, the defendant insisted on offering proof that the animal was gentle, and plaintiff objected on the ground that he was proceeding on a violation of an ordinance.

The only maintainable cause of action stated in the complaint is one for the keeping of a vicious animal and the consequent negligence of the defendant, and defendant was erroneously prevented from introducing proof on this issue.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

PARSONS v. DELAWARE & HUDSON CO.   (No. 101/81.)

(Supreme Court, Appellate Division, Third Department.   May 5, 1915.)

COMMERCE ☞27—INTERSTATE COMMERCE—EMPLOYERS' LIABILITY ACT.

   A Canadian car left a point in Pennsylvania for a point in Maine, and then came empty to a point in New York, where it was taken to the employer's car shop, and, while it was being repaired, the head of a nail flew up and struck an employé's eye. When it left the shop, the car was taken empty to a point in New York state and loaded for an interstate trip. *Held*, that the actual work on the car at the time of the injury determined whether it was intrastate or interstate work, and that the employé had no remedy under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), but only under the state Workmen's Compensation Act.

   [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ☞27.]

Appeal from Workmen's Compensation Commission.

In the matter of the claim of Foster Parsons for compensation under the Workmen's Compensation Law against the Delaware & Hudson Company, employer. From a determination of the State Workmen's Compensation Commission awarding compensation to the claimant for injury to his eye, the employer and self-insurer appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

W. D. Waldron, of New York City, for appellant.

E. C. Aiken, of Albany, for the Attorney General.

Jeremiah F. Connor, of New York City, for the Commission.

John F. & William H. Murray, of Troy (William H. Murray, of Troy, of counsel), for respondent.

JOHN M. KELLOGG, J. The claimant sustained his injury while at work in the car repair shops, of the appellant at Colonie, N. Y. An empty car was brought into the shops to have its safety appliances repaired and for a new roof. The claimant removed some roof boards from the car, and, while drawing the nails from them, the head of a nail flew off and hit him in the eye. The boards were to be replaced on the car and the roof tinned. The car was in the shops from June 17th to July 17th. It was the property of the Quebec, Montreal & Southern Railway Company, and its home was in Canada. It does not appear when it came to the Delaware & Hudson Company's road. It left Hudson, Pa., May 12th, with a load of Anthracite coal, for Brunswick, Me., passing through Mechanicville, N. Y., May 13th. By way of the Boston & Maine Railroad it came to Eagle Bridge, N. Y., June 18th, empty, and from there was taken to the shops at Colonie for a new roof and repairs. It left the shops July 17th and went to Corinth, N. Y., empty, was there loaded with paper for Cleveland, Ohio, returned to Rouse's Point, and delivered to the Rutland Railroad Company July 27th, continuing an interstate trip.

The appellant contends that at the time of the accident the claimant was engaged in interstate commerce, and that, if he has any remedy, he must look to the federal Employers' Liability Act.

In Illinois Central Railroad Co. v. Behrens, Adm'r, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, the intestate was one of the crew attached to a switch engine operated exclusively in New Orleans. The crew handled interstate and intrastate traffic indiscriminately, frequently moving both at once, and at times turning directly from one to the other. At the time of the injury they were drawing intrastate cars. The next movement of cars was to be interstate cars. It was held that the intestate was not at the time engaged in interstate commerce, and the fact that the next cars to be moved were interstate cars was not material; the court saying the true test is the nature of the work being done at the time of the injury.

In Barlow v. Lehigh Valley R. R. Co., 214 N. Y. 116, 121, 107 N. E. 814, 815, the court says:

"It is an anomalous situation, and one to be remedied as far as possible by legislation, that an employer's liability to his employé may be governed by one rule at one moment and by an entirely different rule at the next, though the employé is all the time engaged in precisely the same kind of work. We are not disposed to increase the difficulty by drawing nice distinctions."

In that case cars loaded with coal came from Sayre, Pa., to the defendant's yard in Cortland. The coal was for the defendant's use at that station, for its engines used on intrastate or interstate commerce. Upon arriving, the cars were placed upon a side track. The switching crew were about to place the cars upon the trestle for unloading, and

the plaintiff, one of the crew, reached under the engine to examine a brake beam, when the engineer suddenly backed the engine, causing the plaintiff's injury. The plaintiff was allowed to recover under the federal Employers' Act; the court remarking at page 119 of 214 N. Y., page 814 of 107 N. E.:

"The transportation was not completed until the cars reached their destinations, the trestle where they were to be unloaded. The interstate transportation was interrupted, but not terminated, when the cars were put upon the siding in the Cortland yards."

In Chicago, Milwaukee & St. Paul Railway Co. v. State of Iowa, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. Ed. 988, it was held that where a car of coal was shipped from Illinois to Davenport, Iowa, and after it arrived at Davenport the loaded car was transhipped to other places in Iowa, the shipment to Davenport was interstate commerce, but the shipment from Davenport was a reshipment, a separate transaction, and intrastate commerce, subject to a state regulation which did not violate any federal law.

These cases show that we are not to be governed by technicalities; that the federal and state statutes are each to have a reasonable construction and may be harmonized. The actual work being performed at the time of the injury determines its character and is the real test whether it is interstate or intrastate work. The state law must give way to the federal statutes, but they are not necessarily antagonistic. It is a well-known custom that a railroad company at its pleasure uses foreign cars found upon its road, making compensation therefor, and that it is not required promptly to return home a car if it has use for it. For all practical purposes we may treat this car as that of the appellant company. It was in its possession, subject to its control and use at its will in its business, with no recognized obligation to send it home while it had use for it. We may assume that, if the empty car was to go home at once, it would not have been placed in the repair shop for the extensive repairs contemplated. It is true that, after the car left the shop, it was taken to Corinth and there loaded with paper for Cleveland. If the appellant had desired, it might as well have been loaded with freight for Albany, Buffalo, or any other intrastate point. There is nothing to indicate that, at the time the car was taken to the shop, there was an intention that its next trip should be an interstate one. Evidently there was no intention upon the subject. It was not known just when the repairs would be finished or what use the appellant would make of the car when it left the shop. The movement of the empty car from Eagle Bridge to Colonie and from Colonie to Corinth was not interstate commerce. The interstate trip from Pennsylvania to Maine and from Maine to Eagle Bridge had been finished. The interstate trip from Corinth to Cleveland had not been entered upon. We may assume that cars are loaded at Corinth Mills daily for different destinations. The load for this car happened to be interstate freight. Apparently the loading was the first indication of an interstate trip. We need not consider what would be the result if this car, en route from Maine to Canada, had been stopped off at Colonie for repairs necessary to be made to enable it to get home.

This case is unlike Pedersen v. Delaware, Lackawanna & Western Railroad Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. There the work was being performed upon a bridge which was used for interstate and intrastate commerce. Here the work was being performed in the appellant company's shop, where the employé is called upon to perform any work required. The mere fact that he was engaged upon an empty foreign car partly dismantled (used indiscriminately for intrastate and interstate commerce as occasion required) does not deprive him of the benefit of the laws his state has made for his protection. The shops and the tracks leading into them were not used at any time as an agency in interstate commerce as such. We need not inquire what rule would apply if the car had contained interstate freight in transit. If a home car of the appellant company, at the end of an interstate trip, in need of repair before again entering service, had been brought into the shops for repair, the repair would not be an act of interstate commerce merely because the first trip after the repairs happened to be an interstate service. The after service is immaterial. The question is as to the character of the car as it stood in the shop.

We conclude that the determination of the Workmen's Compensation Commission should be affirmed. All concur.