[S. F. No. 6993. In Bank.—August 7, 1915.]

## SOUTHERN PACIFIC COMPANY (a Corporation), Petitioner, v. A. J. PILLSBURY et al., as Members of and Constituting the Industrial Accident Commission of the State of California, Respondents.

Workmen's Compensation Act—Injury to. Railroad Employee—Character of Employment—Conclusion of Law from Admitted Facts—Jurisdiction.—In an application to the Industrial Accident Commission for compensation for the death of an employee of a railroad company engaged in both intrastate and interstate commerce, where all the facts touching the nature of the deceased's employment, the character and use of the instrumentality in the repair of which the deceased was engaged at the time of his death, are admitted, whether the deceased was engaged in interstate commerce or intrastate commerce work is one of law rather than of fact; and if engaged in interstate commerce, the State Industrial Accident Commission has no jurisdiction of the proceeding, the jurisdiction being exclusively vested in the federal authorities by virtue of the terms and provisions of the Common Carrier's Liability Act of the United States.

Id.—Federal Common Carriers Liability Act—Construction of.—The federal Common Carriers Liability Act deals with common carriers by railroads engaged in interstate commerce, and that only while engaged in interstate commerce, since of course Congress has no control over purely intrastate operations of such roads, and it provides that these common carriers shall be liable in damages to any person suffering injury while he is employed by such carrier in such interstate or foreign commerce.

Id.—Employee Engaged in Interstate Commerce—Jurisdiction.—A truck builder and repairer of trucks for locomotives employed in the roundhouse of a railroad company used for housing switch locomotives, operated in the yards in handling both intra and interstate commerce, who, at the time of the accident which caused his death, was engaged in repairing a switch locomotive in the roundhouse, which locomotive, was not then being used in interstate commerce, but had been withdrawn from such service in the operating department shortly before the accident and returned to it three days after, was engaged in interstate business, and the Industrial Accident Commission of this state had no jurisdiction to award compensation for his death.

APPLICATION originally made to the Supreme Court for a Writ of Review directed to the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Henley C. Booth, for Petitioner.

Christopher M. Bradley, and Meredith & Landis, for Respondents.

HENSHAW, J.—The Industrial Accident Commission of California entertained jurisdiction in the case where an employee of the petitioner met his death by accident while engaged in his usual occupation. It made an award in conformity with our law to the widow of the deceased. The probative facts are not in controversy. The deceased was a truck builder and a repairer of trucks for locomotives. He was so employed in petitioners' roundhouse No. 1 at Roseville, California. At the time of the accident which caused his death he was engaged in repairing switch engine No. 1173 in roundhouse No. 1. This roundhouse was used for housing switch locomotives, which switch locomotives were operated in the yards at Roseville Junction in handling both inter and intrastate commerce. About seventy per cent of the work of the switch engines in the Roseville yard is interstate commerce work. Seventy per cent of the cars moved through the yard are used in connection with interstate commerce. At the time of the accident the petitioner was not using switch engine 1173 in interstate commerce. It had been withdrawn from service in the operating department on January 13th and was not returned to the operating department until January 19th, three days after the accident occurred. The yardmaster at Roseville Junction resumed control of the operation of the engine on January 19th, when it was restored to service. The Industrial Accident Commission concluded from these facts that the deceased at the time he sustained his injury, while in the employ of petitioner, was not engaged in interstate commerce work.

No question is here presented as to the finality of this last finding of the commission. But, indeed, that finding is not, in strictness, a finding of pure fact, but rather is it a conclusion of law drawn from a consideration of the admitted facts, to which consideration have been applied principles of law of more or less intricacy. In this respect it may be compared to a finding of ownership of land. It may be and often it is

said that it is a mere statement of fact to declare that one owns a piece of land. But, after all, it is the ultimate conclusion arrived at from the consideration of many facts, such as written instruments and their recordation, which facts necessarily have to be considered in connection with principles and propositions of law often abstruse and difficult of determination, such as the sufficiency of the recordation and the legal meaning of the instrument asserted to convey title. (*Savings & Loan Society* v. *Burnett*, 106 Cal. 514, 538, [39 Pac. 922].) In this case all of the facts touching the nature of the deceased's employment, the character and use of the instrumentality in the repair of which he was engaged at the time of his death, being beyond controversy and fairly found by the commission, the one important legal question is that of the jurisdiction of the commission to retain and consider the application for relief. Phrasing it differently, if the deceased, an employee of the petitioner, who was and is engaged as a railroad corporation in interstate as well as intrastate business, was at the time the accident befell him engaged in interstate commerce, the state commission admittedly had no jurisdiction, the jurisdiction being exclusively vested in the federal authorities by virtue of the terms and provisions of the Common Carriers Liability Act of the United States ("An act relating to liability of common carriers by railroad to their employees in certain cases," April 22, 1908, passed Public No. 100, chapter 149, 35 Stats. U. S. 65, [Fed. Stats. Ann. (Supp. 1909), p. 584; U. S. Comp. Stats. (1913), sec. 8658].)

It needs no citation of authority to show that if the case of the deceased comes within the purview of the federal act, the state accident board is without jurisdiction, and this proposition is of course conceded.

The federal act deals with common carriers by railroads engaged in interstate commerce. It deals with them only while engaged in interstate commerce, since of course Congress has no control over the purely intrastate operations of such roads. It provides that these common carriers "shall be liable in damages to any person suffering injury while he is employed by such carrier in such (interstate or foreign) commerce." Was the deceased at the time of his death so employed?

No fixed rule for the construction of this statute has been laid down by the supreme court of the United States. Per-

haps none can be.  However that may be, in the present condition of the law an intelligent answer to the question necessitates a consideration, at least, of the federal decisions bearing upon this statute.  In *Zikos* v. *Oregon etc. Navigation Co.*, 179 Fed. 893, a section hand, injured while engaged in repairing a main-line track, used both for inter  and intrastate commerce, was held to come within the purview of the federal statute, and thus to have been engaged in interstate commerce.  The circuit court there said: "No doubt there may be situations, indeed we have the highest authority for it (Employer's Liability Cases, 207 U. S. 495, [28 Sup. Ct. Rep. 141, 52 L. Ed. 297]), when instrumentalities that may be used for interstate or intrastate traffic, or both, but which at the time are not being used for either, as when engines or cars are undergoing repair, or in cases of clerical work when the acts or things done are not physically or otherwise directly connected with the moving of traffic, where there could be no ground for claiming liability under the act of Congress, even though the carrier in fact be engaged in interstate as well as local traffic.  But where the employment necessarily and directly contributes to the more extended use and without which interstate traffic could not be carried on at all, no reason appears for denying the power over the one, although it may indirectly contribute to the other." The reference here made to the decision of the supreme court of the United States in Employer's Liability Cases, 207 U. S. 495, [52 L. Ed. 297, 28 Sup. Ct. Rep. 141], is addressed to the following language from that decision: The court declares that it will not stop to consider the numerous instances "where, although a common carrier is engaged in interstate commerce, such carrier may, in the nature of things, also transact business in intrastate commerce," but cites some examples, and amongst them the following: "Take again, the same road having shops for repairs and it may be for construction work, as well as a large accounting and clerical force."  In *Darr* v. *Baltimore & Ohio R. R. Co.*, 197 Fed. 665, plaintiff was employed by defendant to make what are called "running repairs"—temporary repairs made upon the rolling stock while in actual though suspended use.  A locomotive with its tender, used by defendant in hauling interstate trains between two points, reached the end of the run and was placed on a fire track, as usual, to wait the time for starting upon the return trip.  Plaintiff was sent to replace a bolt which had

been lost from a brake shoe of the tender and while so employed was injured. It was held by the district court that he was engaged in interstate commerce. In *Colasurdo* v. *Central R. R. of New Jersey,* 180 Fed. 832, plaintiff was a repairer of tracks used both for interstate and intrastate business. While engaged in his employment he was injured by a train engaged in purely intrastate work. The district court held plaintiff to have been engaged in interstate commerce, and its views were affirmed by the circuit court of appeals. (See same case, 192 Fed. 901, [113 C. C. A. 379].) In *Lamphere* v. *Oregon R. & N. Co.,* 196 Fed. 336, [47 L. R. A. (N. S.) 1, 116 C. C. A. 156], the plaintiff was a locomotive fireman in the employ of defendant engaged in interstate commerce. He was ordered with others to report to a station to relieve the crew of an interstate train. He was killed while approaching this station by the negligent acts of other employees operating another train also engaged in interstate commerce. He was held by the circuit court to come within the purview of the federal act. In *Northern Pacific R. R. Co.* v. *Maerkl,* 198 Fed. 1, [117 C. C. A. 237], Maerkl, a car repairer, was engaged in repairing a refrigerator car of the railway company in its railway shops at South Tacoma, Washington. The refrigerator cars were used extensively and indiscriminately in both inter and intrastate business. It was being repaired for future use in both classes of business. While so at work Maerkl sustained his injuries. He was held by the circuit court to be within the purview of the federal act. In *Law* v. *Illinois Central R. R. Co.,* 208 Fed. 869, [L. R. A. 1915C, 17, 126 C. C. A. 27], the circuit court of appeals of the sixth circuit held that a boiler-maker's helper employed in the shops of the company and injured while assisting in the repair of an engine which was regularly in use in interstate commerce, but temporarily in the shop for repair, where it had been for twenty-one days, and which was returned to use two days later, was employed in interstate commerce within the meaning of the act. In *Eng* v. *Southern Pacific Co.,* 210 Fed. 92, the district court held that a carpenter engaged in framing a new office in a freight shed, which shed was owned, controlled, and operated by the railroad company in furtherance of its interstate and intrastate business, was engaged in interstate commerce, his work being "rather in the nature of the repair of an instrumentality then in use," which

instrumentality was employed in interstate commerce. In
*San Pedro etc. R. R. Co.* v. *Davide,* 210 Fed. 870, [127 C. C. A.
454], the action was by a railroad section hand for injuries
sustained while he was returning to camp on a handcar. The
work in which he had been engaged was ballasting the main
track, which main track was employed in interstate and intra-
state commerce. The circuit court of appeals held that he
was engaged in interstate commerce and so came within the
provisions of the federal law.

Turning from these decisions to those of the highest court of
the land, the court which alone can speak with finality upon
the construction of this statute, in *Johnson* v. *Southern Pacific
Company,* 196 U. S. 1, [49 L. Ed. 363, 25 Sup. Ct. Rep. 158],
Johnson having been injured in handling a defective coupling
to attach a dining car to a train, it was argued that the dining
car was empty, had not entered upon its trip, and was there-
fore not engaged in interstate commerce; that its character at
the time and place of the injury was local only. The supreme
court of the United States declared that, while waiting for
the train to be made up for the next trip it was as much an
instrumentality engaged in interstate commerce as when on
its trip, since it was regularly used in the movement of inter-
state traffic. In *Walsh* v. *New York & New Haven R. R. Co.,*
223 U. S. 5, [38 L. R. A. (N. S.) 44, 56 L. Ed. 327, 32 Sup.
Ct. Rep. 169], plaintiff was engaged in replacing a drawbar
on one of defendant's cars which was then in use in interstate
commerce. Clearly he came within the purview of the federal
act, and it was so decided. In *Pedersen* v. *Delaware, Lacka-
wanna & Western R. R. Co.,* 229 U. S. 146, [Ann. Cas. 1914C,
153, 57 L. Ed. 1125, 33 Sup. Ct. Rep. 648], plaintiff was given
his recovery as being an employee engaged in interstate com-
merce under the following facts. Defendant was operating
a railroad for the transportation of passengers and freight
in both inter and intrastate commerce. Plaintiff was an iron-
worker employed by the defendant in the alteration and repair
of some of its bridges and tracks near Hoboken, New Jersey.
The particular work in hand at the time of the injury "con-
sisting in taking out an existing girder and inserting a new
one." While the plaintiff was carrying a sack of bolts to
the place of his work he was run down and injured by an in-
terstate passenger train. Says the supreme court: "The true
test always is, is the work in question a part of the interstate

commerce in which the carrier is engaged?" "Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such. True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce." In *St. Louis etc. Ry. Co.* v. *Seale,* 229 U. S. 156, [Ann. Cas. 1914C, 156, 57 L. Ed. 1129, 33 Sup. Ct. Rep. 651], Seale's duties related both to interstate and intrastate traffic. He was employed as a yard clerk to examine incoming and outgoing trains and to make a record of the numbers and seals on the car doors, to check the cars with the conductors' lists, etc. At the time of his death he was on his way through the yard to meet an incoming freight train engaged in interstate commerce. Under these facts Seale was held to have been engaged in interstate commerce. In *North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248, [Ann. Cas. 1914C, 159, 58 L. Ed. 591, 34 Sup. Ct. Rep. 305], Burgess, a local fireman, engaged wholly in an intrastate run, had attended to his duties of inspecting, oiling, and firing his engine, preparatory to such intrastate run, and leaving his work to go to his boarding-house was struck by another engine and killed. The supreme court upon the evidence holds that it appeared that certain of the cars to be hauled by this local train had come from a point without the state, and that this was sufficient to fix the employment of Burgess as being within the meaning of interstate commerce, and, further, the fact that at the time of his death neither he nor the engine and train to which he was attached "had participated in any movement of interstate freight," was "legally insignificant." In *Illinois Central R. R. Co.* v. *Behrens, Administrator,* 233 U. S. 473, [Ann. Cas. 1914C, 163, 58 L. Ed. 1051, 34 Sup. Ct. Rep. 646], Behrens' intestate was a member of a crew attached to a switch engine operated exclusively in the railroad yard in the city of New Orleans. He was a fireman and came to his death through the collision of his engine with another. His work indifferently and indiscriminately was in aid of in-

terstate and intrastate commerce.  Says the supreme court:
''At the time of the fatal injury the intestate was engaged in
moving several cars, all loaded with intrastate freight, from
one part of the city to another.  That was not a service in
interstate commerce, and so the injury and resulting death
were not within the statute.  That he was expected, upon the
completion of that task, to engage in another which would
have been a part of interstate commerce, is immaterial under
the statute, for by its terms the true test is the nature of the
work being done at the time of the injury.''  It is proper
here to quote from the opinion of the circuit court of appeals
of the sixth circuit in the Law case.  The Law case never
reached the supreme court of the United States, but its dis-
cussion has value as expressing the views of judges in dignity
next to the highest tribunal.  The decision in the Law case
has been stated above.  The opinion proceeds as follows: ''Ap-
proaching more nearly the specific question presented: There
can be no doubt that railroad employees are within the pur-
view of the Employers' Liability Act while engaged in the
repair of engines, cars, bridges, tracks, and switches actually
in use in interstate commerce.  Such was the express holding
of the supreme court in the Pedersen case.  In *Walsh* v. *New
York etc. R. R. Co.*, 223 U. S. 5, 6, [32 Sup. Ct. Rep. 169, 56
L. Ed. 327, 38 L. R. A. (N. S.) 44], the plaintiff was at the
time of his injuries engaged in replacing a drawbar upon a car
in use in interstate commerce.  In *Central Ry. Co.* v. *Col-
asurdo,* 192 Fed. 901, [113 C. C. A. 379], a track walker en-
gaged in repairing a switch in the railroad yards was held
by the circuit court of appeals of the second circuit to be
within the protection of the act.

''But the crucial question remains whether the engine at the
time the work in question was being done, was so far with-
drawn from commerce as that the work of repair was not a
part of the interstate commerce in which the defendant was
engaged.  The authorities so far cited are not directly de-
cisive of this specific question.  In the Colasurdo case the
switch and track were still in use.  The bridge in the Pedersen
case does not affirmatively appear to have been actually out
of use.  In the Walsh case the car was apparently still upon
a track in the railroad yards, although it was of course tem-
porarily out of use during the replacement of the drawbar.

"In the instant case the engine was in the shop for what is called 'roundhouse overhauling.' It had been dismantled at least 21 days before the accident. Up to the time it was taken to the shop it was actually in use in interstate commerce. It was designed for return thereto upon completion of repairs. It actually was so returned the day following the accident. It clearly did not lose its interstate character from the mere fact that it was not at the time actually engaged in interstate movement, no more than did the dining car in *Johnson* v. *Southern Pacific R. R. Co.*, 196 U. S. 1, [25 Sup. Ct. Rep. 158, 49 L. Ed. 363], while waiting for a train to make the return trip, or than did the car in the Walsh case while standing on a track awaiting replacement of the drawbar. Were the repairs being made in the roundhouse between two regular daily trips, the engine, while under such repair would clearly not lose its character as an instrumentality of commerce; and plaintiff, in such case, would have been engaged in interstate commerce. We have not here a case of original construction of an engine not yet become an instrumentality of interstate commerce. It had already been impressed with such use and with such character. Its preservation as such was not a matter of indifference to defendant, so far as its interstate commerce was concerned. (See *Pedersen Case*, 229 U. S. 151, 152, [33 Sup. Ct. Rep. 648, 57 L. Ed. 1125].) Under the existing facts, can the length of time required for the repairs change the legal situation? If so, where is the line to be drawn? How many days temporary withdrawal would suffice to take it out of the purview of the act? And is it material whether the repairs take place in a roundhouse or in general shops? Is not the test whether the withdrawal is merely temporary in character? As held in the Pedersen case, the work of keeping the instrumentalities used in interstate commerce (which would include engines) in a proper state of repair while thus used is 'so clearly related to such commerce as to be in practice and in legal contemplation a part of it.' In *Northern Pac. R. R. Co.* v. *Maerkl*, 198 Fed. 1, [117 C. C. A. 237], the circuit court of appeals of the ninth circuit held that an employee engaged at the railway shops in making repairs upon a refrigerator car theretofore used in interstate commerce, and intended to be again so used when repaired, was within the protection of the Employers' Liability Act. The repairs there in question were substantial in their nature,

requiring at least a partial dismantling of the car, which had been in the shop two days when the accident occurred. The rule announced by this decision commends itself to our judgment. We find nothing in the decisions of the supreme court opposed to the conclusion so reached. On the contrary, it may be noted that the Maerkl case is cited (with apparent approval) in the opinion in the Pedersen Case, 229 U. S. 153, [33 Sup. Ct. Rep. 648, 57 L. Ed. 1125], upon the subject of the test to be applied in determining whether the work is a part of the interstate commerce in which the carrier is engaged.''

What rule of interpretation can be deduced from these decisions? None other than that first declared in the Colasurdo case, 180 Fed. 832, where it is said: ''One man might have duties including both interstate and intrastate commerce, and he would be subject to the act while engaged in one and not the other. This being so, the question is whether his repair of a switch is such employment when the switch is used indifferently in both kinds of commerce?'' This is affirmed and restated by the supreme court in the Pedersen case, in the following language: ''The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?'' This principle of construction is repeated and once more declared in *Illinois Cent. R. R. Co.* v. *Behrens,* 233 U. S. 473, [Ann. Cas. 1914C, 163, 58 L. Ed. 1051, 34 Sup. Ct. Rep. 646].

But while this principle aids materially in the solution of the question, the application of it does not resolve all difficulties, for in the multifarious forms in which employees engaged by railroads find occupation, there will always be questions of difficulty and doubt as to whether or not the particular occupation is in fact ''a part of interstate commerce.'' And this difficulty, indeed, is recognized by the federal courts as in the Darr case, where it is said: ''Doubtless in the administration of this act it will be necessary often to draw some very fine distinctions.'' But our review of the federal decisions forces the conclusion that while certain of the cases contain intimations which might be construed unfavorably to petitioner's contention here that the deceased was engaged in interstate commerce, the adjudications directly in point sustain its position, and no adjudication of the federal court is a denial of its position. Thus in the quotation from Employers' Liability Cases, 207 U. S. 463, [52 L. Ed.

297, 28 Sup. Ct. Rep. 141], it is perhaps intimated that men engaged in repair shops are not employed in interstate commerce, and a similar intimation is found in *Zikos* v. *Oregon etc. Nav. Co.*, 179 Fed. 893, but still, at the most these are but intimations, *obiter dicta,* lacking entirely the force of adjudications. Touching the adjudications, one is in principle identical with the case at bar; another presents an exact legal parallelism.

The first of these is the Law case, from which quotation has been made. It was a decision by the circuit court of appeals. It holds that where an engine, engaged in interstate commerce, has been taken to the railroad shops for repairs, has there remained for twenty-one days before the injury occurred, and after the occurrence of the injury has been restored to use in interstate commerce, the men employed in making those repairs were engaged in interstate commerce within the contemplation of the federal act. Nothing really differentiates that case from the one at bar, saving one circumstance. The engine in the Law case was "regularly used in interstate commerce." The engine in the instant case was used indifferently in both kinds of commerce. But we are bound to hold that this distinction is without significance, especially in view of the fact that if we are to measure these different uses by their quantity a greater precentage of the use of the engine was interstate commerce use.

The other case to which reference has been made is *Northern Pacific Railway Co.* v. *Maerkl*, 198 Fed. 1, [117 C. C. A. 237], and, as we have said, the legal parallelism between that case and the one at bar is exceptionally exact, the one immaterial difference being that in the Maerkl case it was a car which was undergoing repairs instead of an engine. But the car in that and the engine in this case were both in the shops undergoing repairs. Both were indifferently used in intra and interstate commerce. Both were returned to use after the injury and after the repairs were made. If the employee engaged in his work upon the refrigerator car was engaged in interstate commerce, it is impossible to escape the conclusion that the repairer in this case was equally so engaged.

Were this question one solely of state cognizance we would be disposed to hold that a man so employed was not engaged in interstate commerce. But the pronouncements of the federal courts upon their statutes are those of highest authority

and the state courts are in duty bound to accept those pro-
nouncements. We have not the light of the views of the
supreme court upon the exact question here presented and
failing that we must take the views of the next highest federal
tribunal. Those views from two circuit courts of appeal are
identical. They leave room for no other conclusion than that
the injured employee in this case was engaged in interstate
commerce. We are not unmindful in saying this, that the
appellate division of the supreme court of the state of New
York in a similar case has held that the federal statute did not
apply. (*Parsons* v. *Delaware & Hudson Co.*, [167 App. Div.
536, [153 N. Y. Supp. 179], decided May 5, 1915.) But, to
this it must be said that it is significant that neither the Law
case nor the Maerkl case is cited or referred to in the decision
of the New York supreme court, and further it is perhaps
unnecessary to add that over the views of any or all of the
state courts upon a federal statute, the construction put upon
it by the federal courts is controlling.

For these reasons the award of the Industrial Accident Com-
mission is annulled.

Shaw, J., Melvin, J., and Lorigan, J., concurred.