[No. 13143.    Department One.    May 12, 1916.]

THE STATE OF WASHINGTON, *Appellant*, v. BATES & ROGERS
CONSTRUCTION COMPANY, *Respondent*.[1]

COMMERCE—INTERSTATE COMMERCE — WHAT CONSTITUTES — STATE
INDUSTRIAL INSURANCE—STATUTES.  The work of repairing a bridge,
continuously used by an interstate railroad, by placing new concrete
piers underneath it to carry steel braces for its support, is work in
interstate commerce, and so not within the industrial insurance act,
3 Rem. & Bal. Code, § 6604-1, rendering certain employers liable for
insurance premiums.

SAME—INTERSTATE COMMERCE — INDEPENDENT CONTRACTORS — FED-
ERAL EMPLOYERS' LIABILITY ACT.  Independent contractors repairing
a railroad bridge used in interstate commerce, are within the pro-
visions of the Federal employers' liability act, since by § 5 (Comp.
St. 1913, § 8661), any contract intended to enable any common carrier
to exempt itself from liability created by the act is void to that ex-
tent; and hence are not within the industrial insurance act, 3 Rem.
& Bal. Code, § 6604-1, rendering certain employers liable for insur-
ance premiums.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered June 28, 1915, in favor
of the defendant, upon stipulated facts, in an action to re-
cover state insurance premiums.  Affirmed.

*The Attorney General* and *John M. Wilson, Assistant*, for
appellant.

*Allen, Winston & Allen* and *Danson, Williams & Danson*,
for respondent.

MOUNT, J.—This action was brought to recover premiums
alleged to be due the industrial insurance department of the
state upon the pay roll of the respondent while engaged in
the construction of concrete piers for a bridge across the
Spokane river for the Spokane International Railway Com-
pany.

[1]Reported in 157 Pac. 482.

The facts were stipulated, and are, in substance, as follows: The Spokane International Railway Company owns and operates a line of railroad engaged in interstate commerce. Upon its line of railroad, is a bridge, known as bridge No. 1, across the Spokane river, in Spokane county, which bridge is a part of the ·main line of the railway company and used by it in the operation of its trains as a common carrier of freight and passengers between different states of the United States and Canada.

On the 14th day of July, 1911, the public service commission of this state made and served an order upon the railway company to repair this bridge. Thereafter, in December, 1912, the Bates & Rogers Construction Company entered into an agreement with the railway company for the construction of concrete piers for this bridge. These piers were eventually to be used for a new bridge to take the place of the old wooden bridge which was being used temporarily. The bridge was continuously used by the railway company while these piers were being built beneath it. After the completion of the piers, the railway company constructed steel braces which supported the old bridge upon the concrete piers.

In the course of the construction of the concrete piers, the Bates & Rogers Construction Company employed laborers from time to time, and the pay roll thereof amounted to the total sum of $10,834.

The court, upon the stipulated facts, found substantially as above stated, and specifically made two findings as follows:

"That on the 14th day of July, 1911, the public service commission of the state of Washington made an order requiring that said bridge No. 1 be repaired, and that pursuant to said order, and during the years 1912 and 1913, the defendant, Bates & Rogers Construction Company, was employed as agent, servant, and employee of said railroad company to repair said bridge No. 1, and to reconstruct a portion thereof by the erection of concrete piers upon which

the said bridge was supported when completed.  . . .
That the work of repairs upon said bridge was required and
necessary in order to render said bridge safe for use of said
railroad company in its business as a common carrier of in-
terstate and foreign traffic, both freight and passenger."

Upon these facts, the trial court concluded that the work
of the Bates & Rogers Construction Company in the con-
struction of these piers and the repair of the bridge was a
part of the interstate commerce in which the railway com-
pany was engaged, and for that reason, the employees of
that company were not within the provisions of chapter 74
(Laws 1911, p. 345; 3 Rem. & Bal. Code, § 6604-1 *et seq.*),
of the laws of this state relating to the industrial insurance
department, but were engaged in interstate commerce; and
for that reason dismissed the action.   The state has ap-
pealed.

The *Attorney General* makes two contentions: First, that
the work performed by the Bates & Rogers Construction
Company was not a part of the bridge itself, and no part of
the operating property of the Spokane International Rail-
way Company, and hence it was not a part of the interstate
commerce in which the railway company was engaged; and
second, that the Bates & Rogers Construction Company was
an independent contractor, and therefore liable for the pre-
mium due the industrial insurance department of the state.

Upon the first point, it is argued that the concrete con-
struction work was new work of an independent character,
and was not a part of the bridge used in interstate com-
merce.  *Pedersen v. Delaware, L. & W. R. Co.* 229 U. S. 146,
and *Mondou v. New York, N. H. & H. R. Co.*, 223 U. S. 1,
are cited to that effect.  In the *Pedersen* case, where the
plaintiff was engaged in repairing a bridge, and his em-
ployment at the time of his injury was to carry the bolts to
be used in such repairs, the court, at page 151, said:

"Tracks and bridges are as indispensable to interstate
commerce by railroad as are engines and cars, and sound

economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency  .  .  . in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?  .  .  . Of course, we are not here concerned with the construction of tracks, bridges, engines or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such.

"True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce."

In *Horton v. Oregon-Washington R. & Nav. Co.*, 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8, an employee was operating a pumping plant for the purpose of supplying water to locomotives of a railroad engaged in interstate commerce. This employee was on a handcar going to his work. We held that his work was within the provisions of the Federal Employers' liability act. In that case, we referred to *Colasurdo v. Central R. Co.*, 180 Fed. 832, where it was said:

"The track is none the less used for interstate commerce, because it is also used for intrastate commerce, and the person who repairs it is, I think, employed in each kind of commerce at the same time;"

and many other cases there to the same effect.   See, also, *Zikos v. Oregon R. & Nav. Co.*, 179 Fed. 893; *Columbia & P. S. R. v. Sauter*, 223 Fed. 604.

The appellant relies upon the expression in the *Pederson* case as follows:

"Of course, we are not here concerned with the construction of tracks, bridges, engines or cars which have not as yet become instrumentalities in such commerce."

It is probably true that, if a new bridge were being built and had not been accepted and placed in use by the railway company in its interstate commerce, such bridge, until it was placed in use, could not be said to be a part of the road engaged in such commerce.   But that is not the fact here.   The piers in question were built underneath the old bridge; they were built for the purpose of repairing the bridge and making it safe so that it might be used in safety for the purposes of the road.   It is, no doubt, true that, while the concrete was being placed in the piers, the bridge did not rest thereon.   But the trial court found the fact that this was not a new structure but was a repair of the old structure. It is common knowledge that railroad bridges are repaired by replacement of parts thereof, and frequently by the erection of new bridges, and at the same time commerce is carried on thereover without interruption.   The erection of new parts or of a new bridge, under these conditions, is clearly the repair of the old bridge, and the fact that the old bridge is being used while the repairs are being made does not take it out of the use of the railway company in its duty as a common carrier of interstate commerce.

The Bates & Rogers Construction Company, and their employees were engaged in the repair of the bridge which was being used in interstate commerce.   They were, there-

fore, under the authorities above cited, engaged in interstate commerce, and were not within the act of this state making the Bates & Rogers Company liable for premiums due the industrial insurance department.

It is next contended that the Bates & Rogers Construction Company were independent contractors. It is probably true that that company was an independent contractor. But that fact is unimportant, because § 5 of the Federal employers' liability act provides that:

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void." Comp. St. 1913, § 8661.

If the purpose of employing the Bates & Rogers Construction Company to repair this bridge was to avoid the Federal Employers' liability act, then, under the terms of that act, that contract would be void. We are satisfied that there was no intent on the part of either the railway company or the Bates & Rogers Construction Company, by the contract which they entered into, to evade that act. The contract was one of employment by the railway company of the Bates & Rogers Construction Company to do a particular work upon the repair of this bridge. The Bates & Rogers Construction Company, and all of its employees, were employees of the railway company, within the meaning of the Federal Employers' liability act; and the fact that the Bates & Rogers Construction Company was an independent contractor would not affect the nature of the employment.

We are satisfied, therefore, that the trial court correctly concluded that the work done upon this particular bridge in the repair thereof, was work done in interstate commerce, and was not within the law of this state relating to the industrial insurance department. The judgment is therefore affirmed.

MORRIS, C. J., ELLIS, and CHADWICK, JJ., concur.