[No. 20287. Department Two. April 7, 1927.]

E. C. REYNOLDS, *Respondent,* v. ADDISON MILLER COMPANY *et al., Appellants.*[1]

[1] MASTER AND SERVANT (20-2)—MASTER'S LIABILITY—RELATION OF PARTIES—FEDERAL LIABILITY ACT—SERVANTS OF INDEPENDENT CONTRACTORS. A contract between a railroad company and its lessee of an ice house and icing plant, whereby the lessee, at its own cost, was to manufacture and sell ice to the company at a stipulated price for a period of years, makes the lessee an independent contractor, and the company is not liable to employees of the ice company under the Federal employers' liability act.

[2] SAME (20-1)—WORKMEN'S COMPENSATION ACT—WORKMEN EMPLOYED IN INTERSTATE OR INTRASTATE COMMERCE. An employee of independent contractor leasing an ice plant and manufacturing and selling ice to a railroad company, is not an employee engaged in the maintenance and operation of a railroad in interstate or intrastate commerce, within Rem. Comp. Stat., § 7693, of the workmen's compensation act, nor an employee engaged in interstate or intrastate commerce, within Id. 7695.

[1]Reported in 255 Pac. 110.

Appeal from an order of the superior court for Franklin county, Truax, J., entered June 15, 1926, granting the plaintiff a new trial, after directing a verdict for the defendant, in an action for personal injuries, under the Federal employer's liability act. Reversed.

*E. Eugene Davis* and *C. E. H. Maloy*, for appellants.

*Chas. W. Johnson* and *Raleigh P. Swanner*, for respondent.

MACKINTOSH, C. J.—The respondent was injured in August, 1925, while at work icing a refrigerator car belonging to the Northern Pacific Railway Company. The Addison Miller Company and the Northern Pacific Railway Company, in October, 1924, had made a contract whereby the railway company leased to the Addison Miller Company an ice house and icing platform which the railway company owned, and the lessee agreed, at its own cost and expense, to furnish and install ice-manufacturing machinery and to equip the building with suitable refrigerating and handling devices and to provide for storage of great quantities of ice. The lessee further agreed to manufacture, sell and deliver in the bunkers of all refrigerating cars which the railway company might set out at the icing platform all the ice that was required for use by the railway company. The railway company agreed to purchase all the ice that it might require at Pasco where the ice plant was situated, and to pay a stipulated sum per ton for the ice upon monthly statements. The contract was to continue for a period of ten years. The railway company had the right to inspect the work performed by the Addison Miller Company, for the purpose of ascertaining whether it was complying with the agreement. The Addison Miller Company was to

furnish all men, supplies and material for this work, select all its help and fix their wages, and had the exclusive power of directing them as to their duties and the time and place where they should perform them; the railway company having no authority in any manner over such employees.

The respondent was an employee of the Addison Miller Company, his wages were fixed by that company and paid by it, and the foreman of that company directed him as to the time and place where he should work; and on the day on which he received his injury, the respondent was employed in chopping up and tamping ice into the ice chambers of a refrigerator car owned by the railway company and situated upon a track of the railway company at the icing platform. This platform was constructed with a conveyor a little above it, and ice was pushed upon the conveyor from the ice house and by means of lugs was carried along the platform to points where the ice was needed for the cars. It was then pulled off the conveyor onto the platform and chopped into pieces weighing approximately fifty pounds each. There led from the platform a small chute about eight feet long and twenty-two inches wide, with one end resting upon the platform and the other, or lower end, upon the top of the car where the ice was to enter. This chute had about a fourteen per cent incline.

Fellow-employees of the respondent had the duty of pulling the ice off the conveyor and chopping it into chunks and pushing it down the chute to the respondent at the car. The ice on the chute had to be given a shove in order to start it, the incline not being sufficient to carry the ice of its own weight. The respondent was given and was using a picaroon about six feet long, with prongs on one end, with which to seize the fifty-pound chunks of ice coming down the

chute, and to chop it, when it reached the car, into small pieces. The employees on the platform failed to cut a piece of ice, weighing some four hundred pounds, into fifty-pound chunks, and shoved down a piece of ice weighing about two hundred pounds, which struck the respondent's picaroon—which was in the bunker at the time—causing the picaroon to strike the respondent and knock him off the car and to the ground; he at the time having been standing within a few inches of the edge of the car and having no warning that the ice was being shoved down the chute.

This action was begun under the Federal employers' liability act and was tried upon that theory. At the end of the case, a motion for a directed verdict was granted, and thereafter the court granted a motion for a new trial, from which this appeal has been taken.

[1] Viewing the case as one governed by the Federal employers' liability act, it must be held that the respondent had no cause of action against the appellants. That act provides that, "Every common carrier by railroad" while engaging in interstate commerce shall be liable in damages to any employee "while he is employed by such carrier in such commerce," for any injury resulting from the negligence of any such carrier's employees; and further provides that any contract,

". . . the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void."

The question, then, first, for consideration under this act, is whether, at the time of the respondent's injury, he was an employee of a common carrier by railroad. To answer this question, it is necessary to determine the effect of the contract between the Addison Miller Company and the Northern Pacific Railway Company. Under the authorities, that contract was valid and con-

stituted the Addison Miller Company an independent contractor, and its employees would not be employees of the railway company engaged in interstate commerce; nor would the Addison Miller Company itself be within the terms of the Federal employers' liability act.

The supreme court of the United States, in *Robinson v. Baltimore & Ohio R. R. Co.*, 237 U. S. 84, held that a contract between a railroad company and the Pullman Company did not allow an employee of the latter company, who was injured while performing his duty as a porter in charge of a Pullman car which was being hauled by the railroad company, to recover against the railroad company under the Federal statute; for the reason that the Pullman Company was an independent contractor, using its own facilities, controlling its own service, selecting its own servants, defining their duties, fixing and paying their wages, directing and supervising the performance of their tasks, and hiring and removing them at its own pleasure.

In *Chicago, R. I. & P. R. Co. v. Bond*, 240 U. S. 449, it was held that one who was not an employee of an interstate carrier, but of an independent contractor, could not recover under the Federal act against the carrier. The contract in that case, between an interstate carrier and an independent employer of labor, involved the shoveling of coal on a per-ton basis, the coal being shoveled from cars into chutes for the use of the railroad company's engines engaged in both intrastate and interstate commerce. It was held that the railroad company, having retained control of what should be done, but not having retained the right to direct how it should be done, was not liable to the employee of the independent contractor; and the court further held that the contract was not an evasion of the Federal act and dismissed the action, saying that the plaintiff not

having been an employee of the railroad company, "it is not material to consider whether the services in which he was engaged were in interstate commerce."

In *Hull v. Philadelphia & R. R. Co.*, 252 U. S. 475, it was held that the term, "an employee," in the Federal act is used in its natural sense, and that an employee of one company did not become an employee of another company merely by reason of the fact that he was at the time working on the property of the other company.

In *Wells Fargo & Co. v. Taylor*, 254 U. S. 175, there was under investigation an arrangement between a railroad company and an express company by which the railroad company granted the exclusive privilege of conducting the express business over its line and transported cars of the express company attached to passenger trains; and it was held that under this contract the express company was an independent contractor so that one of its employees, while acting as a messenger on an express car in course of transportation, could not be treated as an employee of the railroad company for the purpose of applying the Federal employers' liability act.

In *Drago v. Central R. Co. of New Jersey*, 93 N. J. Law 176, 106 Atl. 803, where an interstate railroad company contracted with an independent stevedoring company whereby for a stipulated price per ton the stevedoring company agreed to load and unload freight of the railroad company, and the stevedoring company selected and removed its own servants, defined their duties, fixed and paid their wages, supervised the performance of their tasks subject only to the inspection and control by the railroad company, it was held that a workman of the stevedoring company engaged in this work was not a railroad employee under the Federal employers' liability act. It was further held that such a contract was no evasion of the provisions of the act.

In *Polluck v. Minneapolis & St. L. R. Co.*, 40 S. D. 186, 166 N. W. 641, a railroad company contracted with an individual to keep coal chutes, from which its locomotives were supplied, filled with coal, and to clean out the ashes of a turntable pit, and this person employed his own assistants, one of whom was injured in doing such work; and it was held that he could not recover under the Federal employers' liability act, not being employed by the railroad company, but by an independent contractor. There are a great many cases to this same effect, a few of which are: *Pittsburgh, C., C. & St. L. R. Co. v. Parker*, 191 Ind. 686, 132 N. E. 372, 134 N. E. 890, 19 A. L. R. 751; *Ft. Worth Belt Ry. Co. v. Perryman*, 158 S. W. (Tex.), 1181; *Kentucky & T. R. Co. v. Minton*, 167 Ky. 516, 180 S. W. 831; *Chesapeake & O. R. Co. v. Harmon's Adm'r*, 173 Ky. 1, 189 S. W. 1135, Ann. Cas. 1918B 41; *Missouri, K. & T. R. Co. v. West*, 35 Okl. 581, 134 Pac. 655; *Bogart v. New York Central & H. R. R. Co.*, 171 App. Div. 652, 157 N. Y. Supp. 420.

This court has had the question of independent contractors under consideration in a few cases, and in *Campbell v. Jones*, 60 Wash. 265, 110 Pac. 1083, 20 A. L. R. 671, held that subcontractors on railroad construction, who worked on an agreement to furnish the tools, appliances and men at an actual cost plus a fixed percentage for profit, were independent contractors and that the relation of master and servant did not obtain between their servants and the railroad company. The court said:

"The record does not show that the railway company was in any manner concerned in the employment of the appellant. It did not hire him directly, nor did it attempt in any manner to direct or control his work while he was engaged in excavating for the pier. Its contract was with Jones & Onserud. It employed that firm to do the work, leaving them to perform it accord-

ing to their own methods, and with their own tools, materials, and employees, subject to the one condition that certain defined results be obtained."

In *Johnston v. Seattle Taxicab & Transfer Co.*, 85 Wash. 551, 148 Pac. 900, it was announced that—

"The general rule is that an independent contractor is one who renders services to another in the course of an independent occupation, representing the will of his employer only as to the result of the work and not as to the means by which it is accomplished; the chief consideration being that the employer has no right to control as to the mode or manner of doing the work; but a reservation by the employer of the right to supervise the work for the purpose of determining whether it is being done in accordance with the contract does not affect the independence of the relation."

See, also, *Kendall v. Johnson*, 51 Wash. 477, 99 Pac. 310; *Bowen v. Smyth*, 68 Wash. 513, 123 Pac. 1016; *Blacken v. Everett Bottling Works*, 137 Wash. 502, 242 Pac. 1102.

[2] It is most strenuously urged by the respondent that, although his action was commenced and tried as one arising under the Federal employers' liability act, it could not be dismissed if he had introduced any evidence which would entitle him to recover under the state statute. Assuming, without deciding, that he was not foreclosed by his pleadings, or by what transpired in the trial, from urging his statutory rights, still the result must be the same. Rem. Comp. Stat., § 7693 [P. C. § 3486], the benefit of which the respondent claims he is entitled to, can not apply to one in his situation; for that section refers to

". . . the case of employees engaged in maintenance and operation of railways doing interstate, foreign and intrastate commerce."

As has already been shown, the evidence clearly shows that the respondent was not an employee of

the railroad company and that the Addison Miller Company, of which he was an employee, was not a common carrier by railroad. Nor can the respondent find any comfort in Rem. Comp. Stat., § 7695 [P. C. § 3515-72], which makes the Workmen's Compensation Act apply to employers and workmen (other than railways and their workmen) engaged in intrastate and also in interstate or foreign commerce; for there is no evidence in the case showing that the Addison Miller Company was engaged in intrastate and also in interstate and foreign commerce, or that any rule of liability or method of compensation had been fixed by the Congress of the United States for employers and workmen doing business as was the Addison Miller Company and its workmen.

Of course no common-law liability existed on the part of the Addison Miller Company, for the reason that it is apparent and undisputed that the damage to the respondent was the result of the negligence of a fellow-servant.

The law seems to be clear that the respondent has no cause of action and that the trial court was correct in granting the motion for a directed verdict.

The respondent, however, cites us to one opinion of this court from which he derives comfort and which, it must be admitted, contains language—unsupported, however, by any citation of authority—which would indicate that the respondent had a right to maintain this suit. That language was not necessary to the decision of the case and, as already said, was unsupported by authority and in fact is contrary to what is practically the unanimous decision of all the courts which have considered this question. The case referred to is *State v. Bates & Rogers Construction Co.*, 91 Wash. 181, 157 Pac. 482, where there was involved the question of the work of repairing a bridge used by a railway

company, and where independent contractors had been employed to do the work; and where, although the court held that the contract was not intended to exempt the railway company from any liability, yet it was said that the railway company employing a construction company to do the particular work made all of the construction company's employees employees of the railway company within the meaning of the Federal employers' liability act, and that the fact that the construction company "was an independent contractor would not affect the nature of the employment." This dictum can not be supported either upon reason or authority and has never been followed by this court. In so far as this dictum has received approval in *Luby v. Industrial Insurance Commission,* 112 Wash. 153, 191 Pac. 855; and *Hilliard v. Clifford,* 134 Wash. 590, 236 Pac. 108, it will be found, on examination of those cases, that the question was not the same as the one here presented, and that the acquiescence in the error in the case of *State v. Bates & Rogers Construction Co.* was made without any citation of authorities or apparent consideration of the question which we have been discussing in this opinion.

Being satisfied, therefore, that the trial court was correct in determining that there was no cause of action proved and that the respondent was not entitled to recover either under the Federal or the state act, we conclude that the court was in error in thereafter granting a new trial.

The cause will be remanded with directions to enter judgment for the appellants.

TOLMAN, ASKREN, and PARKER, JJ., concur.