Arthur Lees, Jr., Appellee, v. Chicago and North Western Railway Company, substituted for Claude A. Roth, Trustee, Appellant.

Gen. No. 43,632.

Original opinion filed December 30, 1947. Refiled January 4, 1950. Released for publication January 5, 1950.

DRENNAN J. SLATER and JAMES B. O'SHAUGHNESSY, both of Chicago, for appellant.

JAMES A. DOOLEY, of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought suit against defendant under the Federal Employers' Liability Act to recover damages for injuries sustained by him in connection with the in-

stallation of a piling cluster adjacent to defendant's right of way over its Illinois River bridge near Pekin, Illinois. Trial by jury resulted in a verdict in his favor for $30,000, and after defendant's motions for judgments notwithstanding the verdict and, in the alternative, for a new trial or for a remittitur were overruled, the court entered judgment on the verdict, from which defendant appeals.

The essential facts disclose that defendant has a single line track from Nelson to South Pekin, Illinois, which crosses the Illinois River in a north and south direction over a bridge approximately 1500 feet long. The bridge is commonly designated as a vertical lift drawbridge and is constructed so that there is a multiple span across the clear channel of the river, a section of which span is raised in a horizontal position to clear the channel whenever necessary to permit river ships to pass. As a protection to the bridge against damage by ship traffic, pilings are driven in clusters on both sides of the bridge and near the clear channel. A pile cluster on the west or downstream side of the bridge, which had been damaged by a river ship some months prior to the accident here involved, had to be replaced.

The defendant railway company was not equipped to perform the work of removing the old cluster and installing a new one, and it therefore entered into a written contract with Carl Budd and Noal Lorance, doing business as the Deneen River Company (hereinafter referred to as the contractor), to do the job. The contract is dated May 13, 1941, and provides for removing the damaged cluster and constructing a new one. The work was to be done in accordance with blueprint No. 24200, attached to the contract. By the terms of the agreement the contractor was to furnish all labor, tools and equipment and certain materials, including the steel jacket, splice plates, etc. The piles were to be furnished by the railway company. The work was to be completed

in a manner satisfactory to the chief engineer of the railway company within 60 days from the date of the contract. The contractor was to be paid 40 cents a foot for handling and driving the creosoted piles, approximately $800 for furnishing and placing the steel jacket on the cluster, $350 for removing the damaged cluster, and 2¼ cents a pound for driving I-beams. Work not included in the specified unit prices but which should be ordered by the railway company was to be done on a cost plus 20 per cent basis.

The timbers or piles, which were each about 60 feet long, were to be unloaded from the defendant's freight cars and handled by the contractor. The contractor undertook to indemnify and save harmless the railway company from all liability arising out of injury to the contractor or its employees, and also from all liability growing out of injury to any railway company employees caused by the negligence of the contractor or its employees.

The blueprint attached to the contract indicates that the piles were to have a minimum penetration of 20 feet below the bottom of the river; it shows the number and spacing of the piles, the angles at which they are to be put in, and the steel jacket in which they are to be encased. Splicing details are given, as well as types of bolts, I-beams, etc. At the right side of the blueprint is a bill of material which states that the railway company is to furnish the creosoted piles, the steel strands, clips and staples. The steel jacket is to be furnished by the contractor.

In the course of construction the railway company's division engineer, L. R. Lamport, wrote the contractor, stating that it would be necessary to provide a walkway from the bridge to reach the new pile cluster and that a steel support for the walk was being shipped from Chicago; that the railway company desired the contractor to handle the steel support from the cars and place

230

it on the pile cluster so that at a later date a walkway could be laid on the steel support. The purpose of the walk was to enable the bridge tender to go out on the cluster to service and maintain the navigation lights.

Work was commenced under the contract on June 24, 1941. In the installation of this pile cluster the contractor employed three of its own barges, one of which was used for timbers and other material, on another was installed a derrick, and on the third a pile driver. The new cluster contained 37 pilings, and each piling was hoisted from the material barge by a derrick, put in place, and then hammered down by the pile driver. The contractor furnished and paid for all labor for this work. The crew consisted of an engineer and a fireman who operated the pile driver, and five carpenters who handled the piling and other materials.

The timbers used for the piling were creosoted so as to protect them against the elements, and because the work was done in hot weather the hammering on the tops of the piles brought out the creosote, creating a slippery condition on the surface of the cluster. After the piles were driven into position, there was a variation of six inches or more from the top of one pile to the top of another. This variation in height was to be compensated for upon the completion of the work by placing a block on top of the cluster. The installation was properly completed by the contractor and payment made by the railway company in accordance with the terms of the contract.

Plaintiff had been employed in the engineering department of the railroad since 1934. His immediate superior was division engineer Lamport. Several days before the work was started plaintiff was called in to Lamport's office and given a plan of the proposed installation. He testified that Lamport told him to go to the site of the bridge ''and see that a good job was done, go as near the plan as they could, and keep the

job moving, as they were late in starting." In compliance with his directions plaintiff proceeded to the scene of the job. He testified that he kept a record of the position of the piles that were removed from the damaged cluster and made himself generally useful assisting the contractor in keeping the job moving along, helping the contractor dismantle the old cluster and install the new timber and I-beams. He stated that on two occasions Lamport came to the bridge while he (plaintiff) was there, and that on one of these occasions he was working with piling.

The driving of the new piles was completed three or four days before the accident. The steel jacket was placed on the cluster July 21, 1941. At that time the contractor's employees on the job were Lorance, two steel workers and two carpenters. The accident occurred July 21. Shortly after lunch on that day it became necessary to put a wooden bearing block on top of the cluster to serve as a basis or support for the steel frame that was to be hoisted in place. Although there was a carpenter standing on the barge right beside plaintiff, he (plaintiff) decided that he would help with the carpentry work required in fastening the block on the cluster. Just before plaintiff went up Vincent Rudolph, one of the contractor's steel workers, had been lifted up from the barge to the top of the cluster. He was about to commence work on the top of the block when plaintiff directed Lorance, who was then operating the derrick, to lift him up. Lorance had many years' experience in this kind of work and knew how to operate a derrick. It must be conceded that plaintiff was fully aware of the condition on the top of the cluster and that he had no prior experience doing work of this kind. He testified that Lorance hoisted him about eight feet above the pile cluster and let him down rapidly, that as he was lifted up he sat in a loop made in the cable from the derrick, that when he came down

on the cluster he put his feet on separate piles, but one of his feet slipped and he fell or sat down on the cluster and received the injury for which he seeks recovery.

As its principal defense the railway company averred in its pleadings and contended upon the trial that under the Federal Employers' Liability Act a carrier is liable only for "negligence of any of the officers, agents, or employees of such carrier"; that the Deneen River Company was an independent contractor; and that a carrier is not liable for the negligent acts of an independent contractor since the latter is not an officer, agent or employee within the meaning of the act. The pertinent provisions of the Federal Employers' Liability Act which establish liability on carriers for negligence are found in Title 45, USCA, § 51, which is Section 1 of the Federal Employers' Liability Act, and are as follows: "Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

██ ██ In support of this defense defendant, upon trial of the cause, offered in evidence its written contract with the Deneen River Company, to which was attached blueprint No. 24200, showing the plan of construction. The court rejected both of these exhibits, holding in effect that the contract comes within the prohibition of section 5 (USCA, Title 45, § 55) of the Federal Employers' Liability Act and is therefore void. Section 5 provides that "Any contract, rule,

regulation, or device whatsoever, *the purpose or intent of which* shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void.'' (Italics ours.) The question thus presented is whether, under the Federal Employers' Liability Act, a railroad may hire an independent contractor to do construction work which the railroad is not equipped to perform, without subjecting itself to liability for torts of the independent contractor. Plaintiff does not seriously contend that the Deneen River Company was not an independent contractor, but he takes the position, as stated in his reply to defendant's answer, ''that any contract or agreement the defendant might have had with the Deneen River Company is no defense to this action because of the provisions of Title 45, Ch. 2, Section 55, of the United States Code Annotated,'' and the court evidently adopted this view in rejecting the exhibits which constitute the principal defense interposed by the railway company. Any doubt as to ''the purpose or intent'' for entering into the contract is dispelled by a reading of the document and by the surrounding facts and circumstances. Defendant's engineer Lamport testified that it was not equipped to do this kind of work. It had no river barges with derricks and pile drivers that would have enabled it to remove the old pile cluster and install a new one. By all the tests laid down in the authorities, the Deneen River Company was an independent contractor. We had occasion in *Ryan v. Associates Investment Co.,* 297 Ill. App. 544, to discuss at length the circumstances which determine whether the relationship of one person to another is that of agent or independent contractor and there quoted from the Restatement of the Law of Agency, vol. I, ch. 7, sec. 220, p. 483 (American Law Institute), which sets forth the following tests: '' '(a) the extent of control which, by the agreement, the master may

exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; and (i) whether or not the parties believe they are creating the relationship of master and servant.' '' See also *Trzaska v. Bigane,* 325 Ill. App. 528, *Hartley v. Red Ball Transit Co.,* 344 Ill. 534, *Casement v. Brown,* 148 U. S. 615, and *Moore v. Phillips,* 197 Ark. 131, 120 S. W. 2d 722. In *Casement v. Brown* the court held that a contractor who contracted with a railroad company to construct piers for a bridge over the Ohio River of sizes, forms and materials according to plans and specifications furnished by the company and to do the work with his own labor, was an independent contractor and was not an employee of the railroad company, and in that case the contractor was therefore held liable for his own negligence. Under the tests set forth in these decisions it clearly appears that the relationship here under consideration, as shown by the acts of the parties themselves, their contract of May 13, 1941, and the blueprint attached thereto, was that of an independent contractor. It therefore becomes important to inquire whether, under the Federal Employers' Liability Act, the defendant could employ an independent contractor to do the work in question without subjecting itself to liability for the tort of the contractor. There is ample authority for the proposition that section 1 of the act

does not make carriers liable for negligence of independent contractors because they are not "officers, agents, or employees of such carrier" and that section 5 does not have the effect of making carriers liable for the negligence of independent contractors unless "the purpose or intent" of the contract entered into between the contractor and the common carrier was to exempt the latter from liability created by the act. In *Socony-Vacuum Oil Co., Inc. v. Premeaux,* 187 S. W. 2d 690 (Texas Civil Appeals), plaintiffs sued under the Jones Act (46 USCA, § 688), alleging that their son was employed by defendant on board its ship and that by reason of acts of defendant's negligence the son contracted tuberculosis; that defendant negligently failed to provide proper medical treatment; and that the death of the son resulted. Plaintiffs had judgment in the trial court which, on appeal, was reversed without remanding. The evidence in that case showed that after the son became ill he was put aboard another ship for medical treatment and that the other ship owner was in fact an independent contractor. In holding that defendant was not liable for the acts of the independent contractor the court said that "The Jones Act, by referring to and adopting relevant portions of the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq., which makes the employer liable for the negligence of his officers, agents, and employees, may have enlarged the employer's liability in some instances . . . , but not where an independent agency has been employed. An independent contractor is not an officer, agent or employee within the meaning of the Federal Employers' Liability Act, at least, where the employer's duty is not absolute." (Citing *Chicago, R. I. & P. Ry. Co. v. Bond,* 240 U. S. 449, and various other decisions.) In the *Bond* case the defendant railroad entered into a contract with plaintiff's intestate for the shoveling of coal on a per ton basis, containing

provisions whereby the intestate was to assume all risk and liability for injury to or death of himself or persons employed by him. In the course of his work the intestate suffered injuries which resulted in his death and suit was brought under the Federal Employers' Liability Act, by his administrator, resulting in a verdict and judgment. The United States Supreme Court reversed the Oklahoma Supreme Court and held that the relationship between the railroad and deceased was one between a common carrier and an independent contractor. In arriving at this conclusion the court set forth and analyzed the relationship of the parties and concluded that ''The case falls, therefore, under the ruling in *Casement v. Brown,* 148 U. S. 615,'' which we referred to earlier in this opinion. With respect to section 5 the court said that ''We do not think that the contract can be regarded as an evasion of § 5 of the Employers' Liability Act,'' quoting its provisions verbatim. ''Turner [plaintiff's intestate] was something more than a mere shoveler of coal under a superior's command. He was an independent employer of labor, conscious of his own power to direct and willing to assume the responsibility of direction and to be judged by its results. This is manifest from the contract under review.''

In *Robinson v. Baltimore & O. R.,* 237 U. S. 84, plaintiff, a Pullman porter, brought suit against the railroad company for injuries received by him while in interstate commerce. The evidence disclosed a contract between the Pullman Company as employer and the injured Pullman porter as employee, releasing the employer and also all railroad companies over whose lines the employer's cars were operated, from all claims for personal injuries. The Supreme Court held the porter was not entitled to recover from the railroad because the contract was effective and binding and was not a violation of section 5 of the Employers' Liability

Act because the porter was not employed by the railroad, and said ''We are of the opinion that Congress used the words 'employe' and 'employed' in the statute in their natural sense, and intended to describe the conventional relation of employer and employe.'' The words ''officers, agents, or employees'' were likewise used in their natural sense in the Federal Employers' Liability Act.

In *Orange v. Pitcairn,* 280 Ill. App. 566, plaintiff, a section hand, was injured while repairing the track of the Wabash Railway Company, an interstate carrier. He brought suit under the Federal Employers' Liability Act. The evidence showed that the Wabash Railway Company had entered into a contract with the Industrial Construction Company to do all work and furnish all equipment in connection with relaying rails on such parts of the Wabash right of way as should be designated. The railroad was given general supervision over the work. Plaintiff was an employee of the Industrial Construction Company, but contended that he was entitled to the benefits of the Federal Employers' Liability Act because of the alleged invalidity of the contract between the railroad and the construction company by reason of section 5 of the act. The Appellate Court reversed the action of the trial court in awarding plaintiff a new trial on the verdict for defendants, and remanded the cause with directions to the trial court to enter judgment on the verdict, stating it to be a well-settled rule of law that a contract for the reconstruction of a railroad within a right of way previously acquired is not a delegation of a chartered power of the railroad, and that a railroad company may enter into such a contract without constituting the contractor its servant, and it was there held that the Industrial Construction Company was an independent contractor. The court cited with approval *Chicago, R. I. & P. Ry. Co. v. Bond,* 240 U. S. 449, for the

rule that section 5 of the Federal Employers' Liability Act is not violated by a contract of an interstate railway company under which certain work on its right of way is to be performed by an independent contractor.

In *Boyd v. Chicago & N. W. R. Co.*, 217 Ill. 332, the court held that the railroad company, having procured a right of way and having let a contract for its grading, was not liable for the death of a laborer hired by the contractor, although the death had been caused by negligence of the contractor. The basis of the court's decision was that the railroad was not liable for the wrongful act of the independent contractor even though the railroad had retained the general right of supervision to see that the contract was properly performed.

One of the cases relied on by plaintiff is *Cimorelli v. New York Cent. R. Co.*, 148 F. 2d 575. In that case the railroad company contracted with the United States government to operate in its railroad yards a temporary place for war material in transit. The contract provided that the identity of the merchandise contained in inbound cars was to be preserved. The railroad company contracted with a construction company to unload and reload the cars. The railroad superintendent selected the place in the yards where and fixed the time when the cars were to be unloaded or reloaded. The railroad superintendent approved in advance all items of cost and the necessity of the purchase of equipment. Plaintiff was employed by the construction company and was injured while unloading freight from a box car. He brought suit against the railroad under the Federal Employers' Liability Act, contending that the contract between the railroad and the construction company was a mere subterfuge and was entered into for the purpose of avoiding liability under the Federal Employers' Liability Act and was therefore a violation of section 5 of the act. Although the circuit court of appeals held that the trial court

was in error in dismissing plaintiff's complaint, it did so on the theory that the evidence showed that the construction company was not in fact an independent contractor, since the terms of the contract and the conduct of the parties left no independence to the contractor. The court distinguished the facts in that case from those in *Chicago, R. I. & P. Ry. Co. v. Bond, supra,* and stated that it was not passing on the question whether the contract was void because of section 5 of the act, such a decision being unnecessary because the contract and conduct of the parties showed that the construction company was not intended to be an independent contractor.

In *Bugg v. Sanders,* 219 Ala. 129, 121 So. 410, it was held that in an action under the Federal Employers' Liability Act for injuries to an employee working in defendant's railroad yard transferring pipe from one car to another, the person under whose direction plaintiff worked was admittedly an independent contractor and that therefore plaintiff could not recover against the railroad on the theory that he was an employee entitled to the benefits of the act. The court considered section 5 and held that the purpose of the contract between the railroad and the independent contractor was not to evade responsibility under the act.

In *Drago v. Central R. Co.,* 93 N. J. Law 176, 106 Atl. 803, plaintiff sustained injuries while unloading a railroad car and brought action against the railroad company to recover damages. He obtained a verdict and judgment which was set aside on appeal. The reviewing court held that it was error for the trial judge not to have directed a verdict for defendant. The evidence in that case showed that plaintiff was employed by the Railroad Stevedoring Corporation, an independent contractor, which, under contract with the railroad, handled its stevedoring work, the railroad retaining only the right of inspection. The trial court

240

had submitted the question to the jury as to whether the railroad and the stevedoring company had entered into a contract for the purpose of permitting the railroad to escape liability, in violation of section 5 of the Federal Employers' Liability Act. The reviewing court held that it was error to allow the jury to pass on the question of whether there was a violation of section 5 because, as a matter of law, the railroad company had no control over the employees of the Stevedoring Corporation; that the railroad had a right to enter into such a contract with the stevedoring company; and that the arrangement was perfectly valid.

In *Klar v. Erie R. Co.*, 118 Ohio St. 612, 162 N. E. 793, the evidence showed that the Erie Railroad Company entered into a contract with the Youngstown Equipment Company whereby the latter handled the repair work on the railroad's engines and cars. Plaintiff, an employee of the Youngstown Company, sustained injuries and sued the railroad, contending that the contractual arrangement between the railroad and the equipment company violated section 5 of the Federal Employers' Liability Act and that therefore plaintiff had a right to sue the railroad directly. He obtained a judgment against the railroad which was set aside by a court of intermediate review, and its action was sustained by the Supreme Court of Ohio. The basis of the Supreme Court's decision was that the contract in question established an independent contractual relation because the railroad did not retain the right to direct or control the mode or manner of doing the work.

As against these decisions plaintiff's counsel relies on some five or six cases, including *Cimorelli v. New York Cent. R. Co.*, 148 F. 2d 575, to which we have already referred. One of the cases on which plaintiff principally relies is the early case of *Erie R. Co. v. Margue*, 23 F. 2d 664, which is distinguished in *Orange*

241

*v. Pitcairn*, 280 Ill. App. 566, hereinbefore cited and discussed. The *Margue* case involved an attempt of the railroad company to escape its liability under the Federal Employers' Liability Act. As pointed out in *Orange v. Pitcairn*, the railway company also furnished all materials and equipment for track maintenance, required the contractor to take out insurance to comply with Ohio State compensation laws, was required to pay the premiums and to pay the contractor any sums adjudged against it for the death of or injuries to its employees, and as stated in the opinion, the purpose of the contract was to substitute the liabilities of the Ohio State Compensation Act for those created by the Federal Employers' Liability Act, and as such was void by the terms of said section 5. In *Moore v. Industrial Commission*, 49 Ohio App. 386, 197 N. E. 403, another case relied on by plaintiff, a railroad company for the purpose of evading the provisions of the Federal Employers' Liability Act entered into a contract with another company whereby the latter was to maintain the rolling stock of the railroad. It was not to do a specific piece of work, as in the instant case. The court held that an employee of the maintenance company was not entitled to compensation under the State act because he was engaged in interstate commerce. The basis of the decision was that the injured employee was ''a loaned employee'' to the railroad company, and also that notwithstanding the provisions of the contract the railroad company exercised supervision over the plaintiff through its road foreman of engines at the time of plaintiff's injuries. In some of the decisions on which plaintiff relies the legal effect of a railroad company leasing its entire system to another was involved; in such cases the courts held that it was contrary to public policy for the railroad company to make such a lease without statutory authority, and they held that a railroad which

attempted to do so remained subject to liability for negligence of the lessee whether the injury was sustained by a member of the public or by an employee. In one of the cases upon which plaintiff relies, *State v. Bates & Rogers Const. Co.,* 91 Wash. 181, 157 Pac. 482, the State brought suit to recover premiums for workmen's compensation insurance from the defendant, who was a contractor engaged in repairing a bridge for a railroad, and it was there contended that the Bates & Rogers Company was an independent contractor. The court held that while it was probably true that the company was an independent contractor, such fact was unimportant because under section 5 of the act the contract would be void. However, the Supreme Court of Washington subsequently repudiated that decision in *Reynolds v. Addison Miller Co.,* 143 Wash. 271, 255 Pac. 110. In that case the Northern Pacific Railway Company entered into a contract with defendant company whereby the latter was to supply ice to railroad cars. The court held that the arrangement between the two companies established an independent contractor relationship. Plaintiff was employed by the independent contractor, sustained injuries while in its employ and thereafter brought suit under the Federal Employers' Liability Act. The court held that he had no right of action against the railroad because he was not employed by that company and that the contract did not violate section 5 of the Federal Employers' Liability Act. Referring to the earlier construction of section 5 in the *Bates & Rogers Const. Co.* decision, the court characterized it as *dictum* which "cannot be supported either upon reason or authority, and [which] has never been followed by this court."

Although in many of the foregoing cases the plaintiff was an employee of the independent contractor and not of the railroad company, as in the case at bar, the significance of the decisions rests in the recognition

by the several courts that section 1 of the act does not make carriers liable for negligence of independent contractors and that section 5 does not have the effect of making carriers liable for negligence of independent contractors where, by the usual tests, the agreement was in fact that of an independent contractor and was not entered into for "the purpose or intent" of exempting the carrier from liability created by the act.

　　Plaintiff further contends that independently of section 5 the contract does not constitute a defense to his cause of action. His counsel argues in effect that the replacement of the pile cluster was interstate commerce, bringing both plaintiff and defendant within the provisions of the Federal Employers' Liability Act, and that under the Federal Employers' Liability Act a railroad may hire an independent contractor with respect to repair or replacement work on instrumentalities of interstate commerce, but if it does so the carrier is nevertheless liable for all acts of negligence of the independent contractor, even though the facts disclose that the railroad has not the equipment to do the work and has used due care in the selection of the independent contractor. However, in examining the authorities cited in support of these contentions we find no cases where a carrier has been held liable for torts of another person who was in fact an independent contractor, and plaintiff is apparently forced into the position of relying on authorities which hold that a lessor railroad is liable for acts of negligence of a lessee railroad whether such acts injure members of the public or employees of the lessee railroad. The theory of liability in that class of cases is that a railroad company is granted a charter for the purpose of enabling it to perform duties for the benefit of the public, and that such a company does not take, as one of its general powers, the right of sub-

244

stituting another to discharge its duties as lessee; but that line of reasoning does not apply to a situation where a railroad enters into a *bona fide* contract with an independent contractor because admittedly a railroad has the inherent power to enter into such an agreement.

██ We have therefore reached the conclusion that the Deneen River Company was in fact an independent contractor, that the railroad had the inherent power to enter into the contract with the Deneen River Company, because it was not equipped to perform the work in question, and that under the current weight of authority a carrier is not liable for injury to one of its employees caused by the negligence of an independent contractor or its employees. Accordingly we think the court erred in excluding the contract and blueprint as exhibits, thus depriving the railway company of its principal defense. The court's ruling on this important question constituted reversible error.

For the reasons indicated the judgment of the superior court is reversed.

*Judgment reversed.*

SCANLAN and SULLIVAN, JJ., concur.

OPINION ON REHEARING.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

After the opinion was filed in this cause we allowed plaintiff's petition for rehearing. Upon careful reexamination of the authorities cited and relied upon by the respective parties, we have decided to adhere to our original opinion and the conclusions reached

therein, except as modified. Accordingly, the original opinion as modified is refiled, and the judgment of the superior court is reversed.

*Judgment reversed.*

SCANLAN, J., concurs.

SULLIVAN, J., took no part in the reconsideration of the case on rehearing.